[Philadelphia, April 29th, 1837.]

WOOD and Others *against* CONNELL and Others.

CARTER *against* The Same.

BELL and Another *against* The Same.

MEREDITH and Another *against* The Same.

1. In an action against A., B. and C. as partners, to recover the price of goods sold and delivered to A., where the defence was that the articles of partnership were entered into through fraud on the part of A. and never actually carried into effect, it was *held*, that the plaintiffs might give in evidence an assignment by A. of all his estate and effects to B., in which B. was preferred, and the proceedings of B. under the assignment.

2. The plaintiffs sold goods to A., who afterwards made an assignment to B., in which B. was a preferred creditor. The assignment stipulated for a release, which was executed by the plaintiffs. Afterwards the plaintiffs, understanding that A. was a dormant partner of B. and C., brought suit against the three for the price of the goods sold. The writ was returned *n. e. i.* as to A: *Held*, that A. was not a competent witness for the other defendants.

3. Where notice has been given to a party to produce books or papers on the trial of the cause, and he is sworn, and states that the books or papers required are not in his possession, he cannot be examined by the counsel generally as to the merits or gist of the the cause. The case does not resemble in this respect that of a bill of discovery in chancery.

4. To exonerate a dormant partner from liability to creditors, on the ground of a fraud practised upon him by the ostensible party, actual fraud must be proved by him. It is

(Wood &c. v. Connell.)

not sufficient for him to show that the other partner was largely indebted at the time of entering into the partnership, without also proving inquiry into the circumstances of the latter, and imposition practised upon himself.

5. The assent of one of two partners to a contract made by the other partner for the junction of the firm with a third person in another partnership, may be inferred from circumstances; and such assent may be implied from the acts of one of the parties, the declarations of another, and the conduct of a third, taken together.

THE first three of these actions were tried together, (by consent) before SERGEANT, J. at a Court of Nisi Prius, held in Philadelphia, on the 18th of November, 1836. The fourth case was tried before ROGERS, J. at a Nisi Prius in Philadelphia on the 30th of November, 1836. A verdict was rendered in each case for the plaintiffs; and they now came before the court on a motion for a new trial.

The first suit was brought by Joseph Wood, Thomas Wood, Thomas Bowman, and Richard C. See, trading under the firm of J. & T. Wood & Co. against John Connell, Francis Worley, and Thomas Welsh, copartners under the firm of John Connell & Co.; the second suit was by Durden B. Carter; the third by Samuel Bell and Henry Sterling, trading under the firm of Bell and Sterling; and the fourth by Thomas Meredith and Edward Spencer, who survived Thomas Mummy, late trading under the firm of Mummy, Meredith and Co. against the same defendants.

The actions were in *assumpsit*, for goods alleged to have been sold and delivered by the respective plaintiffs to the defendants. Process had not been served upon John Connell. The other defendants pleaded *non assumpserunt*.

The plaintiffs having proved the sale and delivery of the goods to John Connell; viz. by Wood and Co. on the 9th of June, 1829, by Carter on the 8th of June, 1829, by Bell and Sterling on the 1st of September, 1828, and by Mummy and Co, on the 3d of June, 1829, gave in evidence the following papers:

" Memorandum of John Connell's situation in business, according to his representation of it, on the 1st of April, 1828, including sales made out of his stock, to the first of April, 1828 :—

| | |
|---|---:|
| Amount of stock belonging to Anderson and Co., taken by John Connell, April 1st, 1828, | $9,044 00 |
| Amount of goods in Philadelphia, bought by John Connell, in Philadelphia, in May, 1828, | 9,959 04 |
| Amount of stock belonging to Anderson and Co., in the retail store, taken by John Connell, 1st April, 1828, | 9,130 36 |
| | $28,133 40 |

(Wood, &c. v. Connell.)

Deduct for sales made from 1st April to August 1st,
 1828,       -        -        -        -        -        -      11,453 96

                                                        $ 16,679 44

Deduct for amount of goods sent to Cincin-
 nati,       -        -        -        -        -    $1,700
Deduct for goods in the hand of auctioneer,    2,600
                                                        ———    4,300 00

Balance on hand 1st August, 1828,         -        -    $ 12,379 44

" The foregoing schedule, exhibits the amount of goods in the hands of, and belonging to John Connell, merchant of Pittsburgh, state of Pennsylvania, on the 1st day of August, 1828 ; which goods, or the amount thereof, he agrees to hold subject to a co-partnership, now about to be formed between him and Francis Worley, merchant, residing in Philadelphia, and Thomas Welsh, merchant, residing in Baltimore, and trading under the name and firm of Worley and Welsh, in the city of Philadelphia ; and further, the said John Connell agrees to place in the said co-partnership now about to be formed, the above amount, $12,379 44, at the rate or value of $9,000, and to be received and taken by the above named parties, at the specie value of $9,000.

" In witness whereof, we have subscribed our names, the 1st September, 1828.                     JOHN CONNELL,
                                            WORLEY & WELSH."

" Articles of agreement and co-partnership entered into, and agreed upon, by John Connell, residing in the city of Pittsburgh, state of Pennsylvania, on the one part, and Francis Worley, merchant, residing in the city of Philadelphia, and Thomas Welsh, merchant, residing in the city of Baltimore, on the other part; witnesseth that the above named John Connell, of the city of Pittsburgh, and the above named firm of Worley and Welsh, of Philadelphia, have this day formed and entered into a co-partnership, to carry on and conduct the mercantile business, under the name of John Connell, in the city of Pittsburgh, and state of Pennsylvania, on the following terms : The said John Connell does agree and hereby bind himself, his heirs, executors, administrators and assigns, to place in the said concern as above named, the amount and full value of $12,379 44, of goods or merchandize, agreeable to the annexed statement: the same to be taken and held by the above named parties, at the specific value of $9,000, as a capital stock in trade : And the above named firm of Worley and Welsh, agree and bind themselves, their heirs, executors and administrators, to place in the above named co-partnership, or let remain in the hands of the concern in Pittsburgh, carried on under the name of John Con-

nell, the amount of $2,000 out of the bill of goods or merchandize bought in the name of John Connell, from the firm of Worley and Welsh, under date of the 26th August, 1828; and they further agree and bind themselves, to place in the above concern, or let remain out of the goods bought subsequently to the date thereof, for the concern of John Connell, the further sum of $3,000. The said $3,000, it is however agreed upon, is not to be placed in said concern of John Connell, before the first day of July, 1829, unless it can be made convenient to the firm of Worley and Welsh: And it is further agreed upon by the parties hereto named, that on and after the 1st of March, 1829, the business of the concern, shall allow John Connell an interest of six per cent. per annum, on $7,000: and after the said Worley and Welsh, shall have placed the additional sum of $3,000 in the business, which will then make a capital stock of $5,000, placed in the concern by them, then the concern shall allow to John Connell an interest of six per cent. per annum, on $4,000. It is further understood and agreed upon by the parties herein named, that after paying the expenses necessary or unavoidably accruing in the business, then there shall be an equal division of the profits that may or shall be made in the business; that is to say, one-half to John Connell, and one-half to Worley and Welsh: And it is further agreed by the said parties herein named, that the co-partnership shall continue to exist for the term of three years, from the date thereof, unless sooner dissolved by the mutual consent of the partners.

" In witness we have hereto subscribed our names, the 1st September, 1828. 　　　　　　　　　　JOHN CONNELL,
　　　　　　　　　　　　　　　　　　WORLEY & WELSH."

It was agreed that the name of the firm, Worley and Welsh, was written in both places in which it is signed in the foregoing paper, by Francis Worley.

The statement, or " memorandum of John Connell's situation in business," and the " articles of agreement," were written upon the same sheet of paper: the latter immediately following the former.

The plaintiffs also proved that goods sold by them to Connell were sent to the store of Worley and Welsh; and read in evidence, (the books having been produced upon notice,) the ledger of Worley and Welsh, at pages 467—397, &c. containing the account of John Connell.

The day-book of Worley and Welsh, at page 78, and date of 2d September 1828, showing " bills payable," charged to John Connell, $2,169 36.

The sales book of Worley and Welsh, under date of 26th and 28th August, 1828, showing sales to John Connell, $4,084 29.

John Connell's ledger at page 71, containing account with Wor-

ley and Welsh, beginning 17th October, 1828, and ending 15th May, 1829.

The same ledger, at page 148, containing an account with Thomas Welsh of Baltimore.

The same ledger, pages 22, 23, 24, ' bills payable' account.

The same ledger, pages 37, 54, a profit and loss account, and page 16, John Connell's own account.

The plaintiff then offered in evidence, an assignment for the benefit of creditors, dated 21st July, 1829, from John Connell to Francis Worley, preferring in the first class, Worley and Welsh, A. M'Donald, Daley and Co., William Lippincot, H. Holdship and Son, Barnitz and Shaub, Robert Patterson, Jacob David, John Latta and Co., and John White and Co. The preference to Worley and Welsh, was to the extent of $11,323 22, the amount of acceptances or advances, and did not cover the further sum of $1,470, due for goods sold. The preferences to the others above named, were for the full amount of their claims.

The counsel for Worley and Welsh opposed the admission of this assignment in evidence. Their objections were overruled, and it was read.

The plaintiffs' counsel next gave in evidence a correspondence between John Connell and Worley and Welsh—and letters from Worley and Welsh to Thomas Welsh, and from Thomas Welsh to Francis Worley. Also, certain entries in John Connell's blotter, under date of 15th May, 1829: and also in Worley and Welsh's day-book, p. 124, 132, 144. Also, sundry drafts by John Connell on Worley and Welsh, and one by Thomas Welsh on John Connell.

A witness produced by the plaintiffs, proved that Welsh, who resided in Baltimore, was occasionally in Philadelphia, and at the store of Worley.

The *defendants* then gave in evidence, the counterpart of the articles of agreement of the 1st September, 1828, subscribed as the one already produced, on which was the following indorsements: the whole paper being in the handwriting of Francis Worley, excepting the signature of John Connell, which was admitted, to be genuine.

"June 1st, 1829.

We, the subscribers, parties to the within agreement, do hereby mutually agree to revoke, annul and make void, said instrument of writing, from the date of the same, for reason of inability to fulfil the stipulations as named therein, by the parties of the first part, and the parties of the second part, having never received any part or portion of profits therefrom, and hereby agreeing to relinquish all

claims to the same, it is agreed this instrument shall be null and void from its date, as though it had never existed; and it is hereby further acknowledged and declared by us, that.there never has been any contracts or liabilities incurred by virtue of it, or from a knowledge of its existence. ₁

In witness of the same, we have hereunto subscribed our names and firm

JOHN CONNELL,
WORLEY & WELSH."

Parol evidence was also given on the part of the defendants, with the view of showing that no partnership existed in point of fact, at the date of the sale of the goods; and that at all events, Welsh was not privy to the agreement. Evidence was also given on both sides in relation to the presence of John Connell in Philadelphia, at the date of the alleged revocation of the articles of agreement.

The defendants also offered in evidence the deposition of Connell, taken under a commission, with his cross-examination, which was made with a reservation of the right to object to the competency of the witness. The court rejected this testimony.

In the cases tried before Judge SERGEANT, the jury were charged in substance as follows:—

These cases depend more on questions of fact than of law. The legal principles involved, seems to me to have been settled on former trials. The sales of goods were made by the plaintiffs, about the 8th or 9th of June, 1829, except the first sale by Bell and Sterling, which was on the 1st of September, 1828, the date of the articles of co-partnership. This presents a curious question; and if you should find for the plaintiffs, you will separate the respective claims of the plaintiffs, Bell and Sterling. The sales were made to John Connell alone; but the allegation is, that Francis Worley and Thomas Welsh were dormant partners; and if they were so at the time of the sales, the plaintiffs are entitled to recover. Dormant partners. when discovered, are liable. The late law relative to limited co-partnership, has altered the liabilities of partners, but it does not apply to this case. Partnership is a hazardous contract. In this. case both must be partners of Connell, to enable the plaintiffs to recover. A dormant partner may be known: he is not always a secret partner: but the allegation of the plaintiffs here is, that it was a secret partnership intended to be concealed. The plaintiffs to prove the partnership, rely on the articles of agreement. They are strong evidence—what the law calls *prima facie* evidence. They are based on certain statements annexed, arranging the terms and stipulations of the partnership; and if there were nothing else but their construction to be decided, they would be clear beyond a

doubt.   The articles of agreement are not prospective; they are present in their operation.   Suppose the co-partnership had been prosperous, they would have bound Connell.   It is said that they were fraudulently obtained, because John Connell was then insolvent, and imposed on Worley and Welsh.   If they chose to trust his representations, it was their own folly.   It would not render the articles void as to third persons, though it might be a good defence between themselves.

The great and difficult points of defence, remain to be considered, and they are—

1. That the articles of agreement were abandoned and relinquished by the parties.

2. That they were revoked before the sales by the plaintiffs, to Connell.

3. That at all events, Thomas Welsh was not a party to the agreement, and therefore not a partner.

1. The defendants allege that the articles of co-partnership were abandoned: you will inquire when, where, and why they were abandoned.   There was no immediate discovery of the insolvency of John Connell.   It don't appear to have been known till afterwards.   It is suggested by the defendants, that he knew he could not carry them into execution.   To show that the parties acted on this agreement, the plaintiffs' counsel has resorted to the books, acts and correspondence of the parties, from 1823 to 1829.   You have heard the comments of the counsel, that it was not intended this partnership should be known; and you will examine whether all these documents and papers show an interest beyond the ordinary course of dealing between vendor and vendee : a peculiar and extraordinary interest.   The assignment, so far as it shows a partnership, is evidence; in any other view, it has nothing to do with it; so far as the assignment and acts under it show a partnership, it is evidence, and no further.   So as to the non-production of papers, and the evidence of the defendants under oath.   You will judge and determine how far the parties dealt with each other, without any peculiar motive or concert.   The defendants should give clear and satisfactory evidence on this head, to show that the articles were waived or abandoned.

2. It is alleged, it was annulled or revoked.   It purports to have been done on the 1st June, 1829.   As to facts previous to its execution, it is not entitled to any weight; and if objected to, would not have been admitted in evidence.   As a revocation, the parties had a right to make it ; and from the time the paper was executed, it is a valid revocation.   We do not know when the revocation was executed.   It is admitted, it was not before the 4th of June, 1829, when Connell was in Philadelphia.   If the date it bears is disproved, *it is* incumbent on defendants to prove some other date: that has not

been done: when all the evidence is given, the date is still afloat. If you can satisfy your mind, it was executed before the sales, it is a good defence for the defendants; but it is incumbent on them to show it.

3. The last inquiry is, was Mr. Welsh privy to the articles of 1st September, 1828? They purport to be signed by Connell, Worley and Welsh, but are executed only by Connell and Worley. One partner has no right to make a co-partnership for his partner. The other partner has a legal right to dissent, but if no such dissent appears, and we have no evidence of it, the next question is, was the partnership conducted with his approbation and knowledge? If there was passive privity, he is liable. If he did not dissent, did he know of it? It is not necessary to have positive evidence; you may have circumstantial evidence: it is a delicate inquiry;—did Francis Worley sign these articles without authority? Welsh lived in Baltimore; did not take an active part, but had a right to inquire and examine into the business; it was the duty of Worley to inform Welsh of what he had done; the connection was carried on nine months; terminated by misfortunes, of which the sale at auction in February and March, 1829, was the first symptom. As to the release, if there was a partnership, it was a palpable fraud.

The case depends on a single question, which has been subdivided: you will make the scrutiny. If prosperous, would it not have been held a valid agreement? Clouds and doubts, hang about it. The case has been argued by counsel on both sides, with unusual care and ability, and you will determine between the parties."

The jury found for the plaintiffs respectively.

In the case of *Meredith* v. *Connell*, Judge ROGERS, charged the jury as follows:—" This suit was originally brought against Worley and Welsh, and John Connell. The sheriff was unable to serve process on Connell, and the suit is now trying between the firm of Meredith and Spencer, surviving partners of Mummy, Meredith and Spencer, and the firm of Worley and Welsh. The action is founded on a partnership which the plaintiffs alleged to have existed on the third of June, 1829, the time the debt was contracted. The plaintiffs have shown that at that time J. Connell purchased goods of the plaintiffs, amounting to the sum of eight hundred and twelve dollars and thirty one cents. The suit is brought to recover that sum with interest. In addition to proof of the debt, the plaintiffs have also shown, that on the first of September, 1828, Worley and Welsh entered into articles of co-partnership with Connell, to continue for the space of three years. The articles and the signature to the articles, are in the handwriting of Worley: but admitting that Worley had authority to bind his partner, this would be sufficient evidence, *prima facie* to enable the plaintiffs to recover. For,

(Wood, &c. *v.* Connell.)

although the plaintiffs, at the time of the credit, were not aware of the existence of the partnership, yet if the partnership did exist, the plaintiffs are liable. It is, what in law is called a sleeping or dormant partnership. The dormant partners are entitled to a share of the profits, and for this reason the law adjudges that they are answerable for the debts. It is not the actual reception of profits, that constitutes a partnership, but a capability of receiving them if made. It is no manner of consequence that J. Connell was only known in the transaction, nor is it of any weight that the firm of Worley and Welsh received no benefit. If, therefore, you should believe that Worley and Welsh were the partners of J. Connell, on the third of June, 1829, your verdict should be in favour of the plaintiffs.

But the defendants contend, that they are not liable to this action.

1. Because Connell imposed on Worley and Welsh, by false representations.

2. Because the articles of co-partnership were never acted on or carried into effect by the parties, but were abandoned and relinquished.

And, 3dly, Because Thomas Welsh never consented to the partnership, either before, at the time, or after the first of September, 1828; but that he remained ignorant of the partnership until his arrival in Philadelphia, in May, 1831: and that he always denied the legality of any claims on that account against the firm.

The two first grounds of the defence exonerate Francis Worley as well as Thomas Welsh. In the third, the defendants contend, that although Worley is bound, yet Welsh is not, because Welsh was unacquainted with the transaction. It will be your duty to examine this case under these three aspects: for if the defendants are right in any one of the positions they have taken, your verdict should be in favour of the defendants. It will be advisable for you to examine the case, under the two first grounds of the defendants' defence, with the special recollection that these grounds discharge Worley from all claims of the creditors of Connell, as well as his partner Welsh. It will facilitate your inquiries, to examine these first, because, if you are of opinion with the defendants on either of these points, there is an end of the cause; and because, if you should be of a different opinion, it must have a material bearing on the third point.

The first allegation of the defendants, as I before observed to you is, that Connell imposed on Worley and Welsh by false representations. On this part of the case, the court instructs you, that fraud avoids all contracts, and if the jury believe there was fraud in the contract of the first of September, 1828, the contract is void. But fraud is not to be presumed. Every man is presumed to be innocent,

until the contrary appear. The defendants must satisfy you of the fact of fraud, either by positive testimony, or by proof of such circumstances as usually attend fraud. As proof of fraudulent concealment, the defendants rely upon a point, which they say appears, that at the time they entered into the articles of co-partnership, Connell was largely indebted, and that he did not disclose his circumstances to Worley and Welsh. This indebtedness is inferred from the deficit, upwards of twenty-eight thousand dollars, which appears in the account of John Connell. The plaintiffs have endeavoured to show how this deficit occurred, whether satisfactorily or not is for you to judge. They insist that it arose from the conduct of Worley and Welsh. But supposing the fact to be as stated, has such fraud been shown as will avoid this contract. When a case of a nature similar to this was before a former jury, I gave them this charge. I have no reason to change the opinion, as then formed, after some deliberation. All the evidence we then had, and that we have now is derived from the articles of co-partnership itself. We know not what took place at the execution of the articles, for the witness if any were present, (and it is probable there were none, at any rate, there are no subscribing witnesses,) have not been produced. I shall not now read the statements contained in the articles, but I desire you to do so, and to ask yourselves, what proof is there in the cause, that these representations were not true to the letter? I then thought, and still think, that if Connell was largely indebted at the time, and Worley and Welsh did not choose to inquire into his circumstances, it is as much a proof of folly on their part as fraud on his. I know of no law which will compel a person to disclose his circumstances in such a case, nor can they now say there was such a fraud on the part of Connell as avoids the contract; and that they are not liable as partners particularly as between them and creditors. The nonfulfilment of the stipulations in the partnership alone would not be such a fraud as to avoid the contract, so as to free a dormant partner from a debt contracted by the partners. To have this effect, it must be such a fraud as to avoid the whole contract from the beginning.

2d. Ground of defence. That the articles of co-partnership were never acted on, or carried into effect, but were abandoned and relinquished by the partners.

The defendants contend, that although they executed the articles of the 1st of September, 1828, yet that nothing further was done. That in effect, as soon as the partnership was formed it was dissolved. That at any rate, it was dissolved before the third of June, 1829, the time the debt was contracted. If this be true, the defendants are not liable. If the parties merely executed the articles without more, the plaintiffs have no right of action. If J. Connell

continued to carry on business on his own account, as before, after the date of the articles, the plaintiffs cannot recover.    In the case of a dormant partner, which this most clearly is, the dormant partner may withdraw without making the dissolution of the partnership publicly known.    And in this particular, a dormant partnership differs from a known ostensible partnership.    In the latter, notice must be given of the dissolution, whereas, in the former it is not necessary.    So, the law is, that a partnership formed by articles for a definite period, may be dissolved by either party, before the termination of the period.    If, then, the jury should believe that nothing more was done than the mere execution of the articles of co-partnership, or that the partnership was dissolved by mutual consent, or by the will of one of the parties before this debt was contracted, your verdict should be in favour of the defendants.    But if this was a subsisting partnership on the 3d of June, 1829, there is nothing in this part of the defence.    And here you must remember, that the burthen of proof is thrown upon the defendants.    The presumption is, that John Connell was trading for the company and not for himself alone, under the name of John Connnell, as was agreed on in the articles of the 1st September.    It is not probable, that persons of the intelligence of these parties, would enter into articles merely for the purpose of setting them aside.    The defendants must prove negatively, that no act was done in pursuance of the articles, or affirmatively, that the partnership was dissolved before the debt was contracted.    To show that nothing further was done than merely signing the articles, the defendants rely upon the books of Worley and Welsh, and J. Connell, and also upon the negative testimony of the four clerks of Worley and Welsh, who have been examined.    You have heard the arguments of the defendants' counsel, on this branch of the case, urged certainly with great zeal and apparent conviction; yet when you recollect, that it was the object of all parties to this contract, to conceal the partnership from the world, you will agree with me in thinking, that there is not much weight in these suggestions.    If the partnership had been noted in the books, or referred to in such manner as to give a knowledge of its existence to the clerks in the store, the objects of the parties would have been frustrated.    It would soon have ceased to be a concealed partnership.    And the observations may be applied with perhaps less force, to the correspondence of the parties, and the silence of Welsh, Worley, and Connell.    This is the case of creditors, who are seeking to recover a debt from an alleged partnership, and they have a right to require that strict proof be given that no act has been done in pursuance of the partnership.    If dissolved, they have also a right to require that the defendants should give the jury some evidence from which they might be able to ascertain with some reasonable certainty when the

partnership was dissolved, where it was dissolved, and how it was dissolved. If no act was done, but the articles fell still-born, as has been said, or if the partnership was dissolved at any time before the 3d of June, 1829; it may be asked, (it has been asked,) why were not the articles cancelled; or why was not some memorandum made; or why was not some person called in to witness the fact that the parties had agreed, or that one of them had determined to proceed no further in the actual or contemplated partnership? You are the exclusive judges of the facts in the cause; but although this is your undoubted right, yet, I think it my duty to say to you, that in the opinion of the court the defendants have failed in their two first grounds of defence. It would be dangerous to the public to defeat honest creditors on the testimony on which the defendants rely on this branch of the case.

It becomes my duty to direct your attention to the third and last point in the cause: That Thomas Welsh never consented to the partnership, either before, at the time, or after the 1st of September, 1828; that he remained ignorant of the transaction until his arrival in May, 1831; and that he always denied the legality of any claim on account of the partnership. You will observe, that the court considers this as the turning point of the cause. Your attention should therefore be directed particularly to it. The law which bears upon this part of the case, is this: One partner cannot, without the consent of his co-partner, introduce a stranger into the firm, nor can he, without his consent, make him a member of another firm. It is not according to the course of ordinary commercial dealing, and is not, therefore, within the scope of the general authority of a partner. But although consent is necessary, yet such consent may be shown, either expressly, (that is, from written memorandum, or otherwise,) or the consent may be implied or proven, by the acts, declarations, or conduct of the parties. I do not mean to say that it may be implied, or proven, by the memorandum or acts, declarations or conduct, of one of the parties. But it may be shown from the act of one, declaration of another, and the memorandum or conduct of the third. You must take them all together; and from the whole evidence you must decide whether, in point of fact, a partnership did exist. And here let me observe, that the defendants' counsel have complained, not a little, that the court have admitted, what they have been pleased to term irrelevant testimony. I know of no such testimony. The whole is pertinent to some one of the three points in the cause. It is all competent testimony; and although you may deem some of it but of little weight, still, there was no reason for excluding it from your consideration. If, then, the jury believe that Worley signed the articles of the first of September without authority—that there was no subsequent authority, and that Welsh had no knowledge of the transaction, or that if he had, he dissented from it, and refused to ratify it, the defendants are not liable. Under such

(Wood, &c. *v.* Connell.)

circumstances, the objection to the recovery would cease to be a technical one, but would be a defence involving the substantial merits of the case, so far as regards Mr. Welsh. It is also a principle of law, from which we are not permitted to depart, that this being a joint suit, the plaintiffs must recover against all or none. If Welsh was not a partner, the remedy must be against Worley and Connell. But, if Welsh assented to the transaction, either before, at the time, or after the first of September, and before the third of June, 1829, or if he knew of it, at any time before the third of June, 1829, and did not expressly dissent, he is as much bound as Worley, the other partner. It would be inequitable and unjust, that Welsh should enjoy all the benefits of a prosperous business, and should be permitted to secure himself from loss, if the business should prove unsuccessful. The law therefore makes it his duty, as soon as he comes to a knowledge of the transaction, to disavow all participation in the concern; and unless he did so, he is bound. And here let me observe, that if Welsh was ignorant of the partnership until after the assignment of Connell to Worley and Welsh, his receipt of his share of the debt due the firm of Worley and Welsh, from the firm of Worley, Welsh and Connell, cannot affect him, as he would stand in the situation of any other creditor whom the debtor might think proper to prefer. But if a partnership did exist of which he was aware, it would be a highly dishonourable and discreditable transaction; subtracting from the other creditors under false pretences the funds which ought to be appropriated to the payment of their debts. The burthen of proof in this part is thrown upon the plaintiffs. They must prove not only the debts and the articles of copartnership of the first September, but they must further show, that it met the approbation of Welsh; that he assented to the arrangement, either before, at the time, or afterwards, and before the bankruptcy of Connell; or that when he became acquainted with the transaction, he did not dissent. You will also recollect, that if knowledge of the partnership is brought home to Welsh, he must then show that he dissented. This is a peculiar case. It is not necessary for the plaintiffs, who are strangers, to bring further proof of the partnership. From the nature of the case, this cannot be expected, for it is evident that the parties intended it to be concealed. We do not even now know how a knowledge was obtained by the plaintiffs. The fact of Welsh's assent to the partnership or his knowledge of it, may be inferred from circumstances. For although consent or knowledge is necessary, yet this, as has been before observed, may be shown either directly, or it may be inferred from the acts, declarations, or conduct of the parties. You, gentlemen, are bound to form your conclusions from the whole evidence, from the entries in the books of one or all, the declarations of another, and the acts, declarations and conduct of one and all of the parties to this contract. A written authority is not necessary.

The third point, as has been already observed, is based on the sup-
position, that Worley was a partner of Connell until the dissolution
of the partnership, by the insolvency of Connell, in July, 1829.
Taking this then, as conceded, the plaintiffs' counsel insist, that Mr.
Welsh must have known of the existence of the partnership before
July, 1829. They say, that it is highly improbable, that Worley,
who was an honest man, would have engaged in so important a
concern without a previous understanding with Welsh. That it
does not appear who were present when the articles were executed.
That Welsh may have been present for aught that appears. They
say that it is still more improbable that Worley would have withheld
a knowledge of it from Welsh until May, 1831, or even until July,
1829. That this is attributing to Worley such imprudent and cul-
pable dishonest conduct, a moral forgery, as would have led to an
immediate dissolution of the partnership. But that notwithstanding
all this, the partnership of Worley and Welsh still continues without
any apparent abatement of confidence on the part of Welsh in the
fidelity and prudence of Worley. They also insist, that a partner-
ship was in contemplation before Connell left Pittsburgh. That
Welsh was desirous that Worley should extend his business. That
in pursuance of this understanding, Connell come on to Baltimore
prepared with his statement; that he then saw Welsh, and that he
afterwards went to Philadelphia and concluded the arrangement
with Worley, who signed the articles as he supposed he had power
to do, for himself and partner. That Connell was again in Baltimore
on the 5th of September: he must have then informed Welsh of the
whole arrangement. That Connell, immediately after he arrived at
Pittsburgh, drew, not on Welsh and Son, but on Thomas Welsh.
That the defence impeaches the honesty as well as the prudence of
Worley. The force of these suggestions is well worthy your seri-
ous consideration. The plaintiffs' counsel also say, that Mr. Welsh
is presumed to be acquainted with the business of the firm of which
he is a member. That he had access to the books and other papers
belonging to the firm, which he did or might have examined. That
an examination must have shown him, that the account of Con-
nell had been closed, and a balance struck on the first of September;
that immediately afterwards, Connell's accounts had swelled from
a comparatively small sum to upwards of $13,000; that the drafts
and acceptances by the firm for Connell, of which the plaintiffs con-
tend, Mr. Welsh must have been aware, were also of such an amount,
as plainly to indicate some change in the relation of Connell. That
this must have led to some inquiry by Mr. Welsh, of the reasons
of the change. To this the defendants have replied, that Welsh
did not examine the books. That he had no opportunity to
examine them, not having been in Philadelphia about this time.
Of these different allegations, you are the proper judges. The
plaintiffs also insist, that Welsh's own acceptances show a know-

ledge on his part.  That these transactions took place without compensation, and are not in the usual course of business.  But this the defendants deny, and say, that it is usual for merchants in the city to accept the drafts of their country customers without any compensation.  The plaintiffs also say, that while Connell was drawing on Worley and Welsh, in Philadelphia, they were sending on their drafts on Connell to Pittsburgh, to be discounted.  That there was a mutual accommodation between them, arising from the connection between them as partners.  The plaintiffs and defendants' counsel have both appealed to the books and the correspondence between the parties.  The defendants say, that not a word is said in either about the alleged partnership.  That it is natural, that if a partnership did exist, there would be some reference made, or mention made of it.  To this however, the plaintiffs reply, that the very object of the parties was concealment, and that the correspondence particularly between Worley and Welsh and J. Connell, shows something more than the ordinary relation of debtor and creditor.  That the firm of Worley and Welsh, not only furnished goods from their own stores, but that they were in the habit of purchasing goods at auction and elsewhere, and forwarding them without orders to Pittsburgh.  That on various occasions they manifested more than ordinary interest in the success of Connell's business; and used language to him in one letter, which a merchant would not venture to use to his customer.  The plaintiff also relies on certain expressions used by F. Worley, in his letter of instructions to the confidential agent in Pittsburgh.  The plaintiff also complains, that the annual statements, and some part of the correspondence between Worley and Welsh, and between W. and W. and their clerk, Durborow, have been withheld or destroyed.  The parties, Worley and Welsh, have been examined, and you have heard their account of the matter; of their statement, and of the whole case, you will judge.  They deny that any papers have been withheld; although it is admitted that some were destroyed, whether improperly or not you will judge.  If you should believe that papers ever in existence have been withheld or improperly destroyed, the inference of law is very unfavourable to the defendants.  It lays them open to the charge of impropriety and unfair dealings : to the imputation, we have a right to conclude, that if produced, they would have shown that a partnership did exist, of which Welsh had full knowledge.

In forming your verdict you must recollect that this is a case of dormant partnership.  That it was the object of the parties to conceal a knowledge of the partnership from the world.  That the plaintiffs are strangers and cannot be expected, nor does the law require that they should furnish positive proof of the fact of partnership.  That you must take the evidence as a whole, and not in detached parts.

(Wood, &c. v. Connell.)

If then, on a full view of the whole case, you should be of opinion, that on the third of June, 1829, the time the debt was contracted, Worley and Welsh, and Connell, were partners, your verdict should be in favour of the plaintiffs. But if you should be of the opinion with the defendants on either of these grounds of defence, your verdict should be for the defendants.

If you should find for the plaintiff, you will give him interest on his debt, by way of damages.

In conclusion, let me remark, that you will throw out of view, all considerations arising from the hardship of the case, the smallness of the claim of the plaintiffs, or the consequences of the verdict to the defendants. Courts and juries are not selected to dispense favours, but to do justice. It is our duty to uphold and protect property, and to remember that the law is founded on the purest principles of morality and fair dealing."

The jury found in this case also for the plaintiffs.

A motion was made for a new trial in each case. The reasons for a new trial in the cases tried before Judge SERGEANT, were as follows :

" Because the court admitted in evidence the assignment, dated July, 1829, and the proceedings under it from John Connell to Francis Worley.

2. Because the court erred in refusing to admit the evidence of John Connell taken on the commission, and his exparte affidavits.

3. Because the court erred in charging the jury.—(a) That a dormant partner need not be a secret partner. (b) That although fraud was proved to have been committed by John Connell on F. Worley, or Worley and Welsh, in procuring the contract of the 1st of September, 1828, still that it would bind the defendants in a controversy with third persons. (c) That the reason why the books did not furnish evidence of a copartnership, was, that the copartnership was intended to be kept a secret. (d) That Thomas Welsh was bound to prove his dissent from the agreement of the 1st of September, 1828. (e) In placing too much dependence on the facts of the plaintiffs, and passing over the facts proved by the defendants.

4. Because the verdict is against law and evidence. (a) There was no evidence that a copartnership had ever been carried into effect, under the articles of agreement of September 1st, 1828. (b) There was evidence that the said articles of agreement were never acted upon or carried into effect, but had been abandoned and relinquished by both and each of the parties, before the sale of the goods by the plaintiffs to John Connell. (c) There was evidence that the said John Connell had committed a fraud on F. Worley, or Worley and Welsh, in the execution of the said articles of agreement, dated the 1st of September, 1828. (d) There was

(Wood, &c. *v.* Connell.)

evidence that the said articles of agreement had been annulled before the contract for the sale of the goods in question. (*e*) There was no evidence that Thomas Welsh had ever authorised the signature of Worley and Welsh to the agreement. dated the 1st of September, 1828, or that he subsequently approved of, or conformed to the same."

The reasons marked 1, 2 and 4, were also filed in the case of Meredith *v.* Connell. The exceptions to the charge of the judge in the latter case, were as follows.

(*a*) "Because the court erred in charging the jury, that there was no distinction between a dormant partner and a secret partner, and that secrecy was an essential feature in the existence of a dormant partnership. (*b*) In charging the jury, that it was of no manner of consequence, that John Connell only was known in the transaction. (*c*) In charging the jury, that they ought to examine the case of the two first grounds of the defence, with the special recollection, that these grounds discharge Worley from all claims of the creditors of Connell, as well as his partner Welsh. (*d*) In charging that the first and second grounds of defence, if rejected, would have a material bearing on the third ground. (*e*) In referring to the existence of a previous similar case, in such a manner, as to warrant an inference as to its result. (*f*) In charging the jury, that if Worley and Welsh did not inquire into John Connell's circumstances, it was as much proof of folly in Worley and Welsh, as fraud in John Connell —that there is no law which compelled John Connell to make his affairs known to Worley and Welsh, and therefore Worley and Welsh could not, in consequence of any concealment, upon these points, set up the defence of fraud, in the agreement of the 1st of September, 1828. (*g*) In charging the jury, that the defendants' counsel had argued with apparent conviction, that there was no partnership, yet there was not much weight in these remarks, because it was the object of all the parties to conceal the partnership. (*h*) Because the court instructed the jury, that the defendants had failed on the two first grounds of their defence, and that it would be dangerous to the public that they should succeed. (*i*) In charging that a positive act of dissent was indispensable on the part of Welsh, if he ever arrived at a knowledge of the articles of the 1st of September, 1828. (*k*) In recapitulating and laying stress on the arguments and evidence of the plaintiffs, and passing over without comment or notice, the evidence and arguments of the defendants. (*l*) In directing the jury, that the defendants' argument, that the books did not show a partnership, was entitled to no weight, because it was the object of all the parties to conceal the partnership. (*m*) In placing reliance on the suggestion that Worley would not have signed the articles of agreement without the assent of Welsh. (*n*) In charging the jury that the consent of Thomas Welsh to the co-

(Wood, &c. v. Connell.)

partnership could be proved by the acts, declarations, memoranda, conduct and book entries of the other parties, beside himself—and in giving to the jury too wide a scope in drawing the conclusion of partnership against Welsh, in the absence of any proof of the special authority proved by him."

The following additional reason was afterwards filed in the case of Meredith v. Connell.

" Because the court permitted the concluding counsel for the plaintiffs to introduce new views of the case not taken by his colleague, and did not confine him to a reply to the arguments of the defendants' counsel, and the enforcement of the grounds taken by his colleague."

Mr. *Brashears* and Mr. *D. P. Brown* argued for the plaintiffs.

Mr. *Randall* and Mr. *Scott* for the defendants.

The opinion of the Court was delivered by

HUSTON, J.—It appeared by the articles of agreement in the statement of the cause, dated 1st September, 1828, that John Connell and Worley and Welsh entered into an agreement of partnership to continue three years from that time. The agreement was signed by F. Worley, writing the name of Worley and Welsh. Thomas Welsh then lived in Baltimore ; and there was no evidence that he was present, but rather proof to the contrary.

It will be observed, for it was the subject of much comment at the trial, and on the argument here, that it is an agreement "to carry on and conduct mercantile business, under the name of John Connell." "The concern in Pittsburgh carried on in the name of John Connell, to the amount of $2000, out of the bales of goods or merchandize bought in the name of John Connell from the firm of Worley and Welsh." "The concern to allow John Connell," &c. &c.

It was not contested that John Connell purchased and received from the several plaintiffs the amount of goods charged to him; all these purchases were made from the 3d of June to the 9th of June, 1829. The defence was, that Connell deceived Worley in the statement of his property prefixed to the agreement, and therefore the agreement was void; but if not, it was rescinded by the parties on the 1st of June, 1829, before the sale of goods in question by the plaintiff.

2. That the articles of partnership were never acted on by the parties, but were abandoned and extinguished instantly after being signed.

3. That Worley could not bind his absent partner by his contracting into a new firm. That Welsh never at any time assented to be a partner of this firm or concern of John Connell, and in fact

(Wood, &c. *v.* Connell.)

that he remained ignorant of it and of every thing relating to it until his removal to this city in May, 1831; and as a consequence that there cannot be a recovery against Welsh—or in this suit against Francis Worley alone.

Each of these matters depended on facts and documents given in evidence in the cause.

In the first three suits the defendants gave in evidence a relinquishment or dissolution of the partnership indorsed on the copy of agreement for partnership, which was in the hands of Francis Worley; it was signed by John Connell and Worley and Welsh, (in the handwriting of Worley,) and it was dated 1st June, 1829, which date was prior to any of the sales by the plaintiffs, proved in these causes. The plaintiffs produced testimony from the keeper of the stage office at Chambersburg, that Connell left that place in the stage for Baltimore on the 1st of June, 1829; proof from Baltimore that Connell arrived there on the 1st of June, and was there on the 2d and 3d of June; and proof in this city that he arrived here on the 4th of June. In the last case of Meredith & Co., the paper evidencing the dissolution was not read by the defendants.

Some questions of evidence were made in the cause.

The paper books show that the books of Worley and Welsh and of John Connell were given in evidence, but afford no evidence of their contents. To understand the cause and some of the arguments and part of each of the opinions delivered to the jury, I must state some of the evidence exhibited by them.

These books showed that Connell and Anderson, and John Connell after Anderson's death, had purchased from Worley and Welsh. That the balance due Worley and Welsh on these accounts was on the 31st of August, 1828, (the day before the partnership) $4104 29. That previous to the 1st of September, 1828, the dealings with Worley and Welsh were of comparatively small amount, but immediately increased to more than double, and on the 1st of January, 1829, amounted to upwards of $21,000. I shall not go further than to state that the dealings in that year amounted by the books of both parties, to above $27,000, and a balance of above $13,000 against John Connell.

John Connell's books were produced among other things, to show his dealings with Thomas Welsh, in Baltimore. Thomas Welsh lived in Baltimore, and was a partner with his father A. Welsh, under the firm of A. Welsh & Co. There was no evidence that he did business alone. Connell's books showed purchases from and payments to Thomas Welsh, between the 1st of September, 1828, and August, 1829, and drafts on him and by him on Connell.

On notice, the letter book of Worley and Welsh was produced and read; much of it was immaterial; some letters were supposed to be of importance to the plaintiff, in which they write of sending Connell goods not ordered—of sending them at first cost, and of

(Wood, &c. *v.* Connell.)

purchasing at auction on purpose for him; and Connell's letters, in one of which he says, I can sell any thing you send that is considered cheap, except cloths.

In August 1829, shortly after Connell nad purchased the goods for which these suits were brought, F. Worley sent a clerk, called Durborow, (now dead) to Pittsburgh, and J. Connell made an assignment to F. Worley of all his effects. Another clerk went out and took possession of the property. The letters of instruction to, and the letters from those clerks, were not produced. In the assignment Worley and Welsh were among the preferred creditors, and received above eleven thousand dollars of the proceeds; some others were in the preferred class; F. Worley had settled his account as assignee. The plaintiffs had released under this assignment and offered the assignment and settlement in evidence. This was objected to and admitted. The defendants have insisted that it was offered to prove a partnership, and was no evidence of this. In truth it was offered to prove many things. That Worley signed the articles of partnership for himself and Welsh, was admitted; it then lay on the defendants to make a defence and the plaintiffs to repel this defence. The evidence of the defendants was given to show fraud in Connell at the time of making the articles; that the partnership was not acted upon; and that Welsh never knew of or assented to the partnership. Whatever conduced to prove the plaintiffs' case in any of these points of view, was evidence; it was not necessary that the piece of evidence should by itself establish any point in the cause; if in connection with other facts or circumstances, it tended to prove any one point, it must go to the jury. There are instances where a verdict will be set aside because irrelevant testimony has been admitted; *e. g.* where the acts or declarations of a third person are given in evidence; but where a matter of fraud or trust or partnership is to be proved by circumstances, and especially where presumptive evidence is to be countervailed by other presumptive evidence, I can hardly conceive of a case in which every act and declaration of the parties relating directly to the matter in dispute, may not go to the jury. Besides the court could not know how the jury would find as to the disputed points; and if they should be of opinion that there was a partnership, the fact that Connell had represented himself as alone liable, and had preferred his partners as creditors, would avoid the release which they had executed to him.

The defendants had taken the testimony of John Connell on a commission to Ohio, where he now lives, and the plaintiffs had joined in the commission, and put cross-interrogatories, reserving the right to object to the competency of the witness in court. This testimony and an *ex parte* deposition of John Connell were offered in evidence, and rejected by the court; and this is urged as another reason for a new trial. This point was decided in *Carter* v. *Connell*, (1 *Wharton's Rep.*

(Wood, &c. *v.* Connell.)

392) ; but as it has been renewed and much pressed, I will again notice it. It was pressed that he was released by both the plaintiffs and defendant, and that from evidence in the cause, the whole fund was exhausted ; and it was urged and many cases cited to show that where the party offered is totally disinterested, he must be admitted. Without disputing the authority of those cases, I reply that not one of them is the case of a partner defendant called by his partners, also defendants, to prove their case; that although the funds have been nearly all collected and applied, yet it is one thing to prove the funds entirely exhausted, and a different thing to stop at proof that they are nearly so ; but the assumption that Connell has been released by the plaintiffs, though true in the letter, is denied in fact, for if the jury should find he had partners and concealed it and preferred them as creditors, the release is void for fraud.

But it was also said that Connell by getting a verdict for the defendants, would leave himself liable for the whole. In one of these complicated cases depending on how several points are found, it is very unsafe to decide on a single point : if there is a verdict for the defendants, it would be evidence that they were not partners; and if not partners, then the release from the plaintiffs to John Connell is valid, and he is discharged. In the circumstances in which he is placed in this cause, he will be liable to the plaintiffs, if they have a verdict and do not get their demand from Worley and Welsh; if a verdict is obtained for the defendants, it clears them, and negatives the allegation that the release is fraudulent by reason of concealing his partners and making creditors of them : in fact he by his own testimony, affirms the release and discharges himself and his future property from the plaintiffs. For these reasons and those given in 1 *Wharton's Rep.* 392, there was no error in rejecting this testimony. Our act which leaves him liable, though not served with process in this cause, perhaps makes the law different from what it would be, if this would forever exonerate him.

There was a matter, not assigned as a reason for a new trial, urged with earnestness. Notice had been served on Thomas Welsh and Worley and Welsh to produce their correspondence from 1st September 1828 till after the assignment of Connell, also a draft of Connell on him, and of himself on Connell, statements of the concern, furnished half-yearly by Worley, &c. And T. Welsh, on oath, stated that he had not the papers called for; that when he removed from Baltimore to this city in 1831, he had destroyed all papers which he considered useless. His own counsel then asked him, "Did you at the time you destroyed those letters, &c. know of the existence of that paper called the articles of co-partnership?" The court decided the question to be improper. In arguing the matter here his counsel put it on the footing of a bill of discovery in chancery where, he said, the defendant might answer fully as to all relating to the matter of inquiry. Now it is not a bill

(Wood, &c. *v.* Connell.)

of discovery, nor like one. It is a common law matter. The party is not bound to answer; generally, he does, to avoid a presumption against him; he is to produce the papers called for or deny their existence, or prove their loss, or that he has them not; and he can go no further; his own counsel cannot ask him any question, unless perhaps to get a more explicit statement, where his answer is not clearly intelligible, but never, as in this case was proposed, examine him as to the very gist of the cause.

It only remains to notice the objections to the charges delivered to the jury by the different judges. One thing when explained, will take off most of the supposed difference between them. Justice SERGEANT did not write out his opinion before or since he delivered his charge to the jury. Mr. *Randall,* one of the defendants' counsel, took a note of the substance of the several topics on which the judge charged. This was stated by the counsel.* Judge ROGERS who supposed there must be a rehearing, wrote out his charge before giving it to the jury. In substance I see no difference between them which can affect the ultimate decision of this cause.

The supposed difference in taking by the one a distinction between a dormant partner and a secret partner, is not very easily found in the charges themselves. *Collier* seems to mention them as distinct. *Gow's Treatise,* I think, treats them as the same. As the counsel has not pointed out, nor do I know of any distinction which would be material in this cause, I shall pass this over. It was, and so each judge told the jury, a material consideration, whether Connell and the defendants did not intend to conceal their connection, and whether this had not an effect on the face of their books and the ignorance of the clerks as to any partnership.

I do not mean any reflection or imputation on the counsel in this case, but many of the objections suppose the charge to say more than it said, and there are some objections to opinions called for by the argument, and now alleged to be illegal. Thus a point made was, that if Welsh was not liable, there could not be a verdict against Worley alone; and so the judges, each of them stated; but it is now alleged that this might have had an effect in inducing a verdict against both. If the judge had omitted to give an opinion on this point, we should have had a motion for a new trial; and now we have one, because he gave a correct one, but in language too pointed.

The defence rested on several grounds: if either of the two first were found for the defendant, there was an end of the case—if found for the plaintiffs, then the jury would find it necessary to consider the remaining questions; this is admitted, and as the judges each told the jury; but the terms in which this opinion was express-

---

* In the course of the argument Judge SERGEANT stated that he had revised and corrected Mr. *Randall's* notes of his charge, and that as printed in the paper-book, it was substantially correct.—REP.

ed, are not to the taste of the counsel: there would be no end of new trials if these objections could have any weight.

(*f*) This ought to be at rest. In *Carter* v. *Connell,* this court gave an opinion on the point. No man could see the statement of Connell's situation prefixed to the articles without seeing that he had incurred responsibilities three months before, to the amount of $28,000; and the account showed sales since that time of say $15,000. Whether Worley inquired as to the debts we know not; and what answer Connell gave we know not. It never can be endured that parties shall enter into partnership and go on for a year, and incur heavy debts, and then one cut himself loose by his own statement that his partner was indebted to a greater amount than he expected; it would not only be dangerous but unjust to the public, that a solvent partner should be discharged on such allegations, unsupported by proof, or even if proved, and he continued in the partnership after he knew or suspected the imposition.

I shall not go over the remaining points in detail,—(*g*) and (*l*) are the same, but the latter in stronger language, and both rather an overstrained gloss on the charge fairly understood. It was expressed in the agreement, that the business should be in the name of John Connell; and though probably the agreement and dissolution were written in Worley's counting-house, no witness was called to either. The great stress of the argument on this part of the cause stood on the facts, that the books did not show and the clerks did not know of the partnership; and the judge said the jury might think with him, that under the circumstances in this case, there was not much weight in the argument from these facts.

(*h*) and (*m*) are the same, and are nothing. The defendants relied on there being nothing to show partnership in the books, and its not being known to the clerks. The plaintiffs relied on many facts and circumstances—he left the jury to decide on the weight of each.

(*n*) charges the judge incorrectly—what he did say was, " I do not mean to say that it (Welsh's assent) may be implied or proven by the memorandum or acts, declarations or consent of one of the parties; but it may be shown from the acts of one, declarations of another, and the memorandum or conduct of the third. You must take them all together, and from the whole evidence you must decide whether a partnership did in fact exist." And again in another part of the charge he says, " The fact of Welsh's assent to the partnership or his knowledge of it, may be inferred from circumstances. For although consent or knowledge is necessary, yet this as has been before observed, may be shown either directly or may be inferred from the acts, declarations, or conduct of the parties. You, gentlemen, are bound to form your conclusions from the whole evidence, from the entries in the books of one or all, the declarations of another, and the acts, declarations and conduct of all the parties to this contract; a written authority is not necessary."

(Wood, &c. *v.* Connell.)

I have not recapitulated more than a small part of the evidence; only enough to show the nature of the dispute and of the charge and defence. There are other causes to be tried as we have been told, between other plaintiffs and the same defendants. The contest arises from and depends on many facts, and the inferences from those facts—and this is the province of the jury, as they were constantly told by each of the judges.

There is an additional reason for a new trial, which I shall notice. The order is this: one of the counsel for the plaintiffs, after the evidence is given, addresses the jury, states the points of law, and cites the authorities. The defendant's counsel are then heard, and often introduce points of law and topics of argument not foreseen by him who preceded them. This almost always makes it necessary for the concluding counsel on the part of the plaintiff to take a more extended view of the evidence and the law than his colleague had done. It would be strange to suppose two such counsel as appeared for the defendants in this cause, would not make it necessary for the concluding counsel to view the cause on a very extended scale; he can't state mere points of law or cite new authorities, except in refutation of the arguments of his opponents; but he may, with this limitation, use all his force for his client. We do not see reason for granting a new trial.

New trial refused.